UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| TOM WATSON, JR., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO. 1:16-cv-00089-SLC |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, *sued as Nancy A. Berryhill,* | ) | |
| *Acting Commissioner of the Social* | ) | |
| *Security Administration*,[1] | ) | |
| | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Tom Watson, Jr., appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB").[2] For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

## I. PROCEDURAL HISTORY

On March 29, 2011, Watson filed an application for DIB, and on August 4, 2011, he filed an application for Supplemental Security Income, alleging disability as of September 13, 2010, in both applications. (AR 173). The applications were denied initially, and upon reconsideration. (AR 173). Watson filed a request for a hearing before an Administrative Law Judge, who held a hearing on July 3, 2012 (AR 46-108), and ultimately rendered an unfavorable

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, *see Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017), and thus, she is automatically substituted for Carolyn W. Colvin in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge. (DE 13); *see* 28 U.S.C. § 636(c).

decision on July 18, 2012, finding that Watson was not disabled as defined by the Act. (AR 170-94). Watson requested that the Appeals Council review the Administrative Law Judge's decision, and the Appeals Council denied his request, making the Administrative Law Judge's decision the final appealable decision of the Commissioner. (AR 195-98).

Watson did not appeal this decision, and instead filed another application for DIB on November 2, 2012, alleging disability as of July 19, 2012. (AR 289-90). This application was also denied initially on February 19, 2013 (AR 230-38), and again upon reconsideration on March 19, 2013 (AR 239). Watson filed a request for a hearing (AR 247-60), and on July 23, 2014, Administrative Law Judge William D. Pierson (the "ALJ") held a hearing at which Watson; Watson's mother, Sally Watson; and Vocational Expert Marie Kiefer (the "VE") testified (AR 109-69). Watson was represented by attorney Randal Forbes at the hearing. (AR 109). On November 13, 2014, the ALJ issued an unfavorable decision, finding that Watson could perform jobs existing in substantial numbers in the national economy, and therefore, was not disabled under the Act. (AR 20-40). Watson requested that the Appeals Council review the ALJ's decision, and the Appeals Council denied his request, making the ALJ's decision the final, appealable decision of the Commissioner. (AR 1-19).

Watson filed a complaint with this Court on March 13, 2016, seeking relief from the Commissioner's final decision. (DE 1). In his appeal, Watson alleges that the ALJ erred by: (1) failing to consider evidence that his condition met or medically equaled impairment Listing 1.04, Disorders of the Spine; (2) failing to appropriately consider evidence of his obesity in the residual functional capacity ("RFC") determination; (3) failing to consider whether Watson was disabled as defined by the Act for some period of time; and (4) failing to include in the RFC, the need for breaks due to frequent urination. (DE 18 at 7-15).

## II. THE ALJ's FINDINGS

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether Watson is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, see 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id*. at 885-86.

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC, or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(5).

At step one, the ALJ found that Watson had not engaged in substantial gainful activity since his alleged onset date of July 19, 2012. (AR 25-26). At step two, the ALJ found that Watson had the following severe impairments: obesity; cervical, thoracic, and lumbar degenerative disc disease, with cervical and thoracic facet arthropathy; radiculopathy; chronic pain syndrome; residuals of collarbone tip removal surgery of the right shoulder; headaches; depression; and anxiety. (AR 26-28).

At step three, the ALJ concluded that Watson did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 28-31). Before proceeding to step four, the ALJ determined that Watson's symptom testimony was "not entirely credible" and assigned him the following RFC:

> [T]he claimant has the [RFC] to perform light work . . . as follows: sit six hours in an eight-hour workday, and stand and/or walk six hours in an eight-hour workday; lift, carry, push, and pull ten pounds frequently and 20 pounds occasionally; occasionally kneel, crouch, crawl, balance, and squat; no climbing of ladders, ropes, or scaffolds; occasional stairs and ramps; occasional bending and stooping, in addition to what is required to sit; frequent, not constant, head and neck motion in all directions; occasional, not frequent, overhead reaching, and overhead work with the dominant upper extremity; no work around bright and flashing lights, or loud noises or noise levels greater than level three; simple, routine, detailed, not complex, repetitive tasks; can sustain the concentration required to perform simple tasks; can remember simple work-like procedures, and best suited to tasks that can be completed in 15 minutes or less; can tolerate predictable changes in the work environment; can meet production requirements in an environment that allows him to sustain a flexible and goal-oriented pace; and, limited from fast paced work, such as assembly line production work, with rigid or strict productivity requirements.

(AR 32). Based on this RFC, the ALJ found at step four that Watson could not perform his past relevant work as an injection press operator, manufactured building repairer, line welder, or drywaller. (AR 38). The ALJ considered the testimony of the VE and other evidence in the

4

record and determined at step five that Watson could perform other jobs in the national economy that exist in significant numbers, and therefore, his application for DIB was denied. (AR 38-40).

## III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id*. Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id*. Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id*. (citing *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)).

## IV. ANALYSIS

Watson argues that the ALJ erred at step three by failing to properly analyze evidence of record that he met or medically equaled the criteria in Listing 1.04, Disorders of the Spine. At step three, the claimant bears "the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing."

5

*Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citing *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999)). However, the Seventh Circuit Court of Appeals has not required a lengthy articulation at step three. *Wurst v. Colvin*, 520 F. App'x 485, 488 (7th Cir. 2013) ("The ALJ's [one-sentence] analysis here was cursory, but it was nevertheless supported by substantial evidence that Wurst could ambulate effectively."). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015). "[A] failure to do so . . . may require a remand." *Ribaudo*, 458 F.3d at 583 (citations omitted).

Listing 1.04 provides the following criteria:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable

> imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404, Subpt. P, App'x. 1, 1.04.

At step three, the ALJ determined:

> The claimant also does not have an impairment that meets the criteria of Listing 1.04 (Disorders of the spine). The evidence does not establish root compression, limitation of motion, motor loss, and a positive straight-leg test. Neither is there evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication.

(AR 28). However, "[t]his is the very type of perfunctory analysis [the Seventh Circuit] ha[s] repeatedly found inadequate to dismiss an impairment as not meeting or equaling a listing." *Minnick*, 775 F.3d at 935-36 (collecting cases). In three sentences, the ALJ dismissed the possibility that Watson meets or medically equals Listing 1.04's criteria. *Id.* at 936. Thus, the ALJ's consideration of whether Watson's impairments satisfied or equaled Listing 1.04 was "perfunctory," as he failed at step three to provide "any explanation of why [Watson's] impairments are not severe enough to qualify as disabled within the meaning of the Act." *Allen v. Barnhart*, 408 F. Supp. 2d 598, 602 (N.D. Ill. 2006); *see Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (reversing the ALJ's decision because the Court could not determine if the ALJ considered whether the claimant, who was not credible, had an impairment that equaled a listing).

Furthermore, the ALJ's perfunctory analysis at step three ignored evidence or mischaracterized the record, at least in part. The ALJ did not mention evidence of Watson's lumbar radiculopathy at step three (*see, e.g.*, 511, 524, 544, 553, 578-79), even though he identified radiculopathy as one of Watson's severe impairments at step two (*see* AR 26). And

7

while the ALJ's analysis at step three states that the record did not establish a positive straight-leg raise test, medical records show that between April 2013 and June 2014 Watson had at least five positive straight-leg raise tests. (AR 538, 556, 568, 572, 575). Neither did the ALJ address a report by Walter Jacobsen, D.O., dated January 9, 2014, finding that Watson's reflexes in his lower extremities were 2/4. (AR 599). Finally, the ALJ contradicted his step-three determination that evidence did not establish limitation of motion for purposes of Listing 1.04 in assigning the RFC.

The Commissioner argues that the ALJ's failure at step three to discuss evidence related to Listing 1.04 is excused because the ALJ discussed this evidence in the RFC determination, and the ALJ's decision does not require "tidy packaging" and should be "read as a whole." (DE 19 at 6 (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004))); *see Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (citations omitted). However, the ALJ's RFC determination does not cure the ALJ's deficient analysis at step three.

To beign, Watson's radiculopathy appears relevant to Listing 1.04's requirement of evidence of nerve root compression. *See Wyatt v. Colvin*, No. 13CV1972-WQH-NLS, 2014 WL 3501974, at *3 n.4 (S.D. Cal. July 14, 2014) ("Lumbar radiculopathy is the compression or inflammation of the spinal nerve root that may cause pain, numbness, or weakness." (citation omitted)); *Pereira v. Astrue*, 279 F.R.D. 201, 203 n.4 (E.D.N.Y. 2010) ("Lumbar Radiculopathy is a compression and irritation of nerve roots in the lumbar region, with resultant pain in the lower back and lower limbs." (citation omitted)). Next, despite discussing Dr. Jacobsen's report of January 9, 2014, in the RFC analysis (*see* AR 34-35), the ALJ did not address Dr. Jacobsen's finding that Watson had reflex deficiencies in his lower extremities, which is relevant to Listing 1.04.

While the ALJ "need not mention every piece of evidence," he "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citations omitted); *see also Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Furthermore, in crafting the RFC, the ALJ assigned postural limitations and precluded the climbing of ladders, ropes, and scaffolds due to Watson's "lumbar range of motion deficits . . . ." (AR 37). But this finding directly contradicts the ALJ's determination at step three stating that the evidence of record did not establish "limitation of motion" in the lumbar area for purposes of Listing 1.04. (AR 28); *see Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (explaining that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning" (alteration in original) (citation omitted)); *Silva v. Barnhart*, No. 02 C 5681, 2003 WL 22425010, at *7 (N.D. Ill. Oct. 23, 2003) (remanding the ALJ's step-three decision where he failed to adequately address the criteria of Listing 14.02).

Moreover, as stated earlier, the ALJ failed to mention any of the five positive straight-leg raise tests at step three or in the RFC determination. Thus, the Court cannot decipher what impact this evidence had on the ALJ's determination at step three or whether the ALJ even considered the evidence at all at step three. *Brindis ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("[T]he ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." (quoting *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985))); *Perez on behalf of Velez v. Berryhill*, No. 16 C 7864, 2017 WL 3725505, at *5 (N.D. Ill. Aug. 29, 2017) (finding error where an ALJ "failed to discuss or analyze that evidence in the course of reaching what appears to be an

adverse credibility determination" (citation omitted)).

Finally, the ALJ's reliance on the state agency doctors does not rehabilitate his perfunctory step-three analysis. Typically, "[t]he ALJ may properly rely upon the opinion" of state agency doctors regarding "medical equivalence at the initial and reconsideration levels of administrative review . . . ." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citations and internal quotation marks omitted). However, here, Richard Wenzler, M.D., reviewed Watson's record on February 18, 2013, well before the medical evidence at issue was a part of Watson's record. (*See* AR 199-210). And while two of the straight-leg raise tests were part of Watson's record when M. Brill, M.D., reviewed it on June 4, 2013, three other straight-leg raise tests and evidence of Watson's deficient reflexes in his lower extremities were not a part of his record at that time. (*See* AR 211-26). Thus, the state agency doctors did not have the opportunity to review the important evidence relevant to whether Watson met or equaled Listing 1.04.

At the very least, all of the foregoing evidence that the ALJ either ignored or mischaracterized in his perfunctory analysis at step three warrants "a more complete discussion of the reasons why [Watson] was not able to meet the listing." *Marinaccio v. Berryhill*, No. 15-CV-00270-LGF, 2017 WL 4541753, at *2 (W.D.N.Y. Oct. 11, 2017) (citation omitted). Consequently, the case will be remanded to the Commissioner to remedy the ALJ's perfunctory analysis at step three, and to build an accurate and logical bridge from the evidence to his conclusion.[4]

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and

---

[4] Because the Court finds that remand is warranted due to the ALJ's perfunctory step-three analysis regarding whether Watson met or medically equaled Listing 1.04, the Court need not reach the remainder of Watson's arguments for remand.

10

the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Watson and against the Commissioner.

SO ORDERED.

Entered this 17th day of July 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge